Will the clerk please call the next case? 120-0602-WC Michael Strode, Appellant versus Illinois Workers' Compensation Commission, National Express Corporation, appellee. Okay, Mr. Brooks, you may proceed. Thank you, Your Honors. Councilman, please report. I believe this case is really a factual-based argument based on the record of this case. We believe the arbitrator's decision that found no compensable accident. Mr. Brooks, could you turn your volume up a little bit? It's a little muffled. Sure, just a second. Is that any better? Well, we'll try it. It's still a kind of a muffled. It's not a clear mic. Let me, I've got an earpiece and let me get the mic closer. Is that any better? Now, now you're clear. Okay, sorry, my mic was out of, not in the right position. Okay, you want me to start over? I don't know if you heard. Please, Mr. Brooks, thank you. Okay, Petitioner, Petitioner Appellant believes that the decision of the arbitrator in this case, finding no accident and no causal connection between that accident that ultimately resulted in the loss of Petitioner's testicle is against the manifest weight of the evidence. We believe that the record in this case shows a plethora of evidence that the arbitrator based his decision on the fact that Petitioner did not use enough significant force in his description of how the accident occurred, such that it would cause a type of injury that we're dealing with here. And we believe that this inference was unreasonable based upon the medical records in this case, as well as Petitioner's testimony. This is a case as a Petitioner's attorney that I find where the medical histories here are very precise and very clear to all the medical providers that he was using a significant amount of force while at work at the time that this alleged incident happened. The claimant clearly testified to that, but apparently Dr. Branch testified that the act of closing, struggling with the van door did not cause his acute condition. So Branch testifies that the mechanism of injury, the plaintiff's claimant described did not cause his injury. So what are we to make of that? I would submit your honor that Dr. Branch's report is not clear as to what the mechanism of injury is, what he's describing, because although Petitioner gave Dr. Branch a history of what happened, and we know from Dr. Branch's report that he reviewed certain medical records, we don't know other than the emergency room records, we're not sure what Dr. Branch reviewed. So in the history that Dr. Branch's report recounts is that this was a difficult transport of a patient. And so one would have to believe that Dr. Branch, when he says mechanism of the injury, is referring to those medical histories as well that show a forcible action on the part of Petitioner to open that door. So I don't know that we can say with relative clarity whether Dr. Branch is referring to what Petitioner told his medical providers when he says that the mechanism of injury was not a competent cause of the incident. We can agree that the claimant bears the burden of proof, correct? Correct. Okay, so the commission apparently found that the claimant failed to prove that the injuries for which he sought compensation on the act were the result of his having struggled to close the van door and his climbing back into the van. So they sort of characterized it, did they not, sort of a failure of proof here? They do, but I think that when they talk about a failure of proof, I find it significant, Your Honor, that both alluding back to Dr. Branch, what his report illuminates, as well as the decision of the arbitrator, none of them discuss in any detail the histories, the consistent histories that Petitioner provided regarding how this incident took place. Now, I understand that they have a right to decide not to accord much, if any, weight to those histories, but I find it significant the fact that they don't even bother to discuss them and what impact that, and what relevance that had to their ultimate decision in finding no accident and no compensability. I think it's hard to ignore those medical histories in discussing how one comes about a rationale for the decision that's made in this case. You also relied on the chain of events theory, right? That's correct. The claimant had no prior problems, there's a work accident, there's a condition of ill-being, so you're also hanging your head on that theory, right? That's correct, and I think that, if I can elaborate a little further on that, I think that I believe that we've sustained the burden of proving a chain of events theory of causation, notwithstanding Dr. Branch's opinions, because I don't believe that Dr. Branch's opinions have a foundation of credibility such that that would impact that chain of events theory of causation. And that leads me to the second point of my argument is on the causal connection issue. The arbitrator found that petitioner did not meet its burden of proof in showing a relationship between the alleged incident and the loss of his testicle. There's two facets to that argument. The first, which we just discussed, is Dr. Branch finding that he didn't believe that the mechanism of injury was a competent cause of the injury and the ultimate removal of petitioner's right testicle. The second is more of an argument that the delay on the part of petitioner in getting the treatment is what resulted in the loss of that testicle. Obviously, I feel that there's a couple of things at play here. The fact that petitioner waited a couple of days to get initial treatment and then another six days before he underwent the surgery to remove the testicle. I think that even if you find that that was a cause of petitioner's ultimate condition and the removal of the testicle, it wasn't the sole proximate cause that but for petitioner. So you're calling the words that even if that's true, but for the accident, he still would not have lost his testicle. That's correct. Applying the but for test in those cases, I think that it meets the definition of being causally related to the accident. So those are really my two main focuses of argument, your honors. I think that there's a manifest way of the evidence in this case. Strongly compels me to argue to you that this decision should be reversed on the issues of accident and causal connection in this case should be remanded back to the commission on the other issues at play here. Thank you. Thank you, Mr. Brooks. You'll have time and reply. Mr. Lane, you need to turn on your mic. Apologies, Judge. There we go. Thank you. Thank you. May it please the court, counsel. My name is Jason Elaine, and I am representing the respondent happily National Express in this case. While we do appreciate the powers of this court, the IWCC arbitrator, as well as the IWCC commissioner, our commissioners on the assigned panel rendered a decision in this case, and that was adopted by those commissions are the commission panel and affirmed by the circuit court. And that decision is sound and sufficient. And it's based on sufficient credible evidence in the record to support that determination. And that decision was not contrary to the manifest way to the evidence. And petitioner has not presented any reason to overturn any aspect of that decision. Essentially, what do you discern to be the bottom line basis for the commission's ruling and you have, you know, as we said, there was an accident clearly of some kind, okay, there was a condition of well being was an operation. And yet, compensation was denied. What do you believe the rationale for the commission was in denying the compensation? Well, I think if you look at the arbitrator's decision, the arbitrator had an opportunity to evaluate an in court demonstration of what the claimant did. And one thing that wasn't mentioned in counsel's argument, and one thing I think that is very important in this case, is that the claimant never moved his lower body when he was closing this fan door. And I think that that's very important considering where the where this injury is alleged to have occurred. He's only moving the upper part of his body. Now there is testimony that he reset his feet in there. I think counsel and petitioner argues that, well, he you know, he's moving his feet at the time. But in his in court testimony, and that demonstration, he never moved his lower body. He only moved his upper body readjusted his feet, but he never moved that lower body. I think that that's very important here, especially considering the condition. If you're only moving your upper body, then how would that cause you to develop some sort of condition in your lower body? It seems to be seems to sort of strain credibility in that case. Furthermore, I think that the commission's decision does heavily rely upon the opinion of Dr. Branch. Now, you know, counsel says that Dr. Branch wasn't clear as to the mechanism. But the petitioner stated in his testimony, I was truthful and honest with Dr. Branch in terms of advising him of the history of the mechanism, the history of medical treatment here. That is his whole own testimony. Furthermore, Dr. Branch reviewed those medical records. So we're essentially what petitioners ask you to do there is to substitute your own judgment for the judgment of the commission, and how they interpreted Dr. Branch's review of the records, as well as Dr. Branch's understanding of the mechanism of injury here. I think that that's really the basis. And I think that that demonstration that the petitioner provided in court was a significant factor in the commission's decision. I think commission and the arbitrator notes, there was no significant force that was practitioner. Again, we're in the record. Is there any explanation of this condition of ill being and how this condition is occurs? Is there anything there? Well, actually, you know, I'm glad that you point that out, Your Honor. Dr. Branch does mention in his report that he notes that given the age of the claimant, that there may be some sort of congenital reason as to why he would have developed this condition. So I think that there is some indication that this is likely this could have been caused by some sort of congenital condition. I think that that's, you know, a potential cause for what happened here. Okay, that aside, is there anything in this record to suggest other than a congenital condition, how this occurs? Well, the other indication is that the claimant did not indicate any sort of pain after he closed the door, but only indicated that sort of pain or pinch whenever he got into the the only other sort of the only other sort of cause that that may be pointed to in the record is is the indications from Dr. Branch regarding the congenital nature of potential congenital nature of the condition. Also, can you clarify just one point? One of the bases for the denial of compensation was that was the alleged delay on the part of the claimant seeking treatment, correct? Correct. That was, yes, correct. But with that basis alone, the legitimate basis for denying somebody compensation, if that was the reason? Well, I think we also need to look at at the records themselves, because the record from, you know, unfortunately, I don't remember the exact date. But I do remember the day of the week. This is the incident allegedly occurred on a Monday. He worked the full day on the Monday worked all day on Tuesday, went to the doctor in the afternoon evening on Wednesday and was advised at that time that he needs to seek emergency medical treatment immediately. Because there was a potential the fear that he may have testicular torsion. Instead of doing that, he waited and didn't go to treatment until Friday. I think that had he presented for that emergency medical treatment as instructed by his physician, at the time, the ultimate result may be different. Yeah, well, how does that square with the well site subtle body of law that says to recover from work related accident, it doesn't have to be the only cause of the soul, even the primary cause. So you're not really totally hanging your head on that, are you? Well, no, I think that I, I think that the delay in treatment certainly factors into it. I don't think that that you know, as I stated previously, I don't believe that the delay in treatment was what the commission was also hanging their head on. I think the commission was hanging their head on. And, and ultimately, in this decision was based upon that in court testimony, which I had previously discussed, I think that that was a much bigger factor here. What was he doing? And also looking at Dr. branches opinion, the opinion of a medical professional professional who had an opportunity to evaluate that mechanism to determine whether or not that mechanism which was described to him by the claimant would have caused or resulted in testicular torsion. At the end of the day, the commission basically found after assessing all the evidence to claim it really didn't meet his burden of establishing his entitlement to Yes. And then it was really, it really, as you indicated, it really was an issue of him meeting not meeting his burden under under those under the, under the standard. So, essentially, this really boils down to is there substantial evidence in the record to support the commission decision. And it's our position that there is, and that what the petitioner is arguing here is essentially, he wants your honors to take a look at that evidence to reweigh that evidence, and to ultimately come up with a different conclusion. And under the standard, that is not that is that is not the that is not a reason to overturn this decision. Is that it, Mr. Lane? Yes, it is. Okay, well, thank you, Council. Mr. Brooks, you may reply. Yes. I think we all agree, as we advance these arguments and discussions that the in court demonstration from petitioner was a significant factor in the commission's decision. But I want to look at the in court demonstration and place it in totality with all of the evidence. So the in court demonstration, the arbitrator, in his decision, indicated that the petitioner just simply used his arms and his hands to slide the door closed. But we need to keep in mind that that was a simulation of petitioners body mechanics. It was not a simulation of the degree to force the amount of force that was used. And to look at that, which is where's the linkage, Mr. Brooks between this force, the amount of force, and the development of this condition of testicular torsion. The linkage comes from a couple areas. Number one, petitioner's own testimony, which he indicated before he gave that in court demonstration, that he had to adjust his stance to grab the handle and apply, in his words, more force to the closing of the door. Secondly, you have the initial history given to the occupational clinic that he had a hard time closing this van door. That's all good. Let's say he gave all the force in the world. Where does it show that the force of force in that activity creates or makes it likely for the condition of testicular torsion? Look at the initial examination, Your Honor, that was taken took place two days after the incident. The physical examination specifically documented testicular tenderness and also a strain of the right iguinal muscle. So there you have a physical manifestation of that force. Yeah, but how do you link once back to the original question? How do you link that to the use of force in a mechanical manner? Is there any expert to say that that creates this condition? There's no expert medical opinion in this case. But if you look at the chain of events that I discussed in terms of the incident, a short period of time, the constant complaints, the consistent histories of treatment, and then the ultimate diagnosis, I think that that establishes a sufficient chain of events for causal connection. Okay. Thank you. That's all I have. Thank you, Mr. Brooks. Thank you, Mr. Lane.